IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PEER INTERNATIONAL CORPORATION;
PEER INTERNATIONAL CORPORATION OF
PUERTO RICO, SOUTHERN MUSIC
PUBLISHING CO., INC., PEERMUSIC LTD.,
SONIDO, INC. d/b/a FAF Publishing, EMI
CATALOGUE PARTNERSHIP, EMI APRIL
MUSIC, INC. and BROADCAST MUSIC,
INC.,

       Plaintiffs,

     v.

LATIN AMERICAN MUSIC CO., INC., d/b/a
ASOCIACION DE COMPOSITORES Y
EDITORES DE MUSICA LATINOAMERICA,
ACEMLA DE PUERTO RICO, INC. and LUIS
RAUL BERNARD.

       Defendants.

------------------------------------------------------------X

Civil No. 97 2875 SEC

COPYRIGHT INFRINGEMENT,
DECLARATORY JUDGMENT,
TORTIOUS INTERFERENCE,
INJUNCTIVE RELIEF AND
DAMAGES

**COMPLAINT**

TO THE HONORABLE COURT:

  COME NOW plaintiffs, Peer International Corporation ("Peer"), Peer International

Corporation of Puerto Rico ("Peer PR"), Southern Music Publishing Co., Inc. ("Southern"),

Peermusic Ltd. ("Peermusic"), Sonido, Inc. d/b/a FAF Publishing ("FAF"), EMI Catalogue

Partnership ("EMI Catalogue"), EMI April Music, Inc. ("EMI April") and Broadcast Music, Inc.

("BMI")(collectively, "Plaintiffs") by their attorneys, Axtmayer Adsuar Muñiz & Goyco and

Richards & O'Neil, LLP, as and for their complaint against Latin American Music Company, Inc.

("LAMCO"), ACEMLA de Puerto Rico, Inc. ("ACEMLA PR") and Luis Raul Bernard ("Bernard")(collectively, "Defendants") very respectfully, allege, state and pray as follows:

## NATURE OF THE ACTION

1.      This complaint asserts claims against Defendants for copyright infringement arising under the United States Copyright Act, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"), for a declaratory judgment pursuant to 28 U.S.C. § 2201, and for tortious interference with contract arising under state law.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338 and pursuant to the Court's supplemental jurisdiction.  In addition, this Court has jurisdiction to declare the rights of Plaintiffs pursuant to 28 U.S.C. § 2201 in that an actual controversy exists between the parties concerning a subject matter that is within the Court's jurisdiction.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## THE PARTIES

3.      Plaintiff Peer is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business in New York, New York.

4.      Plaintiff Peer PR is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, having its principal place of business in Santurce, Puerto Rico.

5.      Plaintiff Southern is a corporation organized and existing under the laws of the State of New York, having its principal place of business in New York, New York.

6.      Plaintiff Peermusic is a corporation organized (and originally named Pera Music Corp.) and existing under the laws of the State of New York, having its principal place of business in New York, New York.

7.      Plaintiffs Peer, Peer PR, Southern and Peermusic (the "Peermusic Plaintiffs") administer and control the copyrighted musical works owned by each such plaintiff. All further references to "Peermusic Plaintiffs" shall refer to Peer, Peer PR, Southern and Peermusic, collectively.

8.      Plaintiff FAF is a corporation organized and existing under the laws of the State of New York, having its principal place of business in New York, New York.

9.      Plaintiff EMI Catalogue is a partnership organized and existing under the laws of the State of New York, having its principal place of business in New York, New York.

10.     Plaintiff EMI April is a corporation organized and existing under the laws of the State of New York, having its principal place of business in New York, New York. Plaintiffs EMI Catalogue and EMI April shall be referred to herein collectively as the "EMI Plaintiffs".

11.     Plaintiff BMI operates as a not-for-profit corporation organized and existing under the laws of the State of New York, having its principal place of business in New York, New York.

12.     Upon information and belief, defendant LAMCO is a corporation organized and existing under the laws of the State of New York with its principal place of business at 442 East 148th Street, Bronx, New York, which does business under the name Asociacion de Compositores

- 3 -

y Editores de Musica Latinoamerica ("ACEMLA"). LAMCO d/b/a ACEMLA purports to be a music performance rights licensing organization as well as a music publishing company.

13.    Upon information and belief, defendant ACEMLA PR is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at 556 Calle Guayama, Hato Rey, Puerto Rico 00918. Upon information and belief, ACEMLA PR is a wholly-owned subsidiary of LAMCO and conducts business on behalf of LAMCO in Puerto Rico.

14.    Upon information and belief, defendant Bernard is an individual residing in New York and is the chief executive officer, director and/or majority shareholder of LAMCO and ACEMLA PR and is the person guiding and directing, directly responsible for, and benefitting from, the acts and omissions complained of herein.

## FACTS

15.    The Peermusic Plaintiffs, FAF and the EMI Plaintiffs (collectively, the "Publishers") are music publishing companies which own and control the copyrights to numerous musical compositions, including those identified and more specifically alleged in the Exhibits annexed hereto (the "Publishers' Compositions"). The Publishers (or their respective predecessors-in-interest) obtained ownership of the copyrights to the subject musical compositions through songwriter agreements executed by the original composers of the musical compositions or their statutory successors (hereinafter collectively referred to as the "Composer Contracts").

16.    The Composer Contracts transfer to the Publishers all of the respective composers' right, title and interest in and to the Publishers' Compositions, for the entire term of the copyright, including, where applicable, the U.S. renewal term of copyright.

- 4 -

17.    BMI is a performing rights society authorized to collect licensing fees pursuant to so-called "blanket licenses" on behalf of its writer and publisher affiliates, including the Publishers.

18.    Except for Southern (which is affiliated with the American Society of Composers, Authors and Publishers ("ASCAP")), the Publishers have authorized BMI, to grant public performance licenses for the Publishers' Compositions and to collect royalties in connection with such licenses.

19.    In order to publicly perform copyrighted musical compositions, broadcasters, such as radio and television stations, are required to obtain a license or permission from either the copyright owner or its designated performing rights society.

20.    None of the Publishers have authorized the Defendants, or any of them, to license the public performance rights or collect royalties for any of the Publishers' Compositions.

### Defendants' Activities

21.    Upon information and belief, Defendants purport to be a music publishing company owning rights in numerous musical compositions and a performing rights licensing society specializing in music written by Latin American composers.  Upon information and belief, and without limitation, Defendants have engaged in the activities listed in paragraphs 21 through 38, below.

22.    Defendants have asserted control over the rights in and to numerous musical compositions, including the Publishers' Compositions.

23.     Defendants have published and distributed promotional materials and a catalogue identifying numerous musical compositions which Defendants purport to control, including, but not limited to, the Publishers' Compositions.

24.     Defendants have purported to unilaterally terminate the rights previously granted to the Publishers in the Composer Contracts.

25.     Defendants have caused or attempted to cause certain of the composers of the Publishers' Compositions (or their heirs) to repudiate the Composer Contracts.

26.     Defendants have obtained purported written assignments of rights in and to Publishers' Compositions.

27.     Defendants have filed with the United States Copyright Office numerous documents alleging rights in and to the Publishers' Compositions, thereby claiming to supersede and cancel the Publishers' copyright registrations or effect a transfer of rights under such registrations from the Publishers to Defendants.

28.     Defendants have notified third-party licensees of music rights (including, without limitation, record and film companies) that Defendants administer and control the rights in and to the Publishers' Compositions.

29.     Defendants have offered license agreements for certain of the Publishers' Compositions for third party usages in recordings and films.

30.     Defendants have threatened legal actions against third parties should they refuse licenses offered by Defendants.

- 6 -

31.    Defendants have notified broadcasters in the United States that Defendants own or control the rights in the Publishers' Compositions and demanded that the broadcasters obtain, for a fee, public performance licenses from Defendants for the public performance of such works.

32.    Defendants have instituted litigation against broadcasters who declined to obtain such public performance licenses from Defendants:

33.    Defendants have granted and issued licenses to third parties, including recording companies and broadcasters, on an individual song basis and a "blanket license" basis, for works including the Publishers' Compositions.

34.    Upon information and belief. Defendants have advised such broadcasters that neither the Publishers nor BMI owns or controls the copyrighted works set forth in Defendants' catalog.

35.    Upon information and belief. Defendants have attempted to license and have licensed the public performance rights in and to the Publishers' Compositions to broadcasters authorizing the public performance of the Publishers' Compositions, which Defendants purport to own or control, and have received and collected license fees from such broadcasters.

36.    Defendants do not own, administer or control, or have the any right to grant or purport to grant public performance licenses for the Publishers' Compositions.

37.    As set forth below, and as specifically alleged in the annexed exhibits, each of the Publishers' Compositions is a copyrighted work owned and controlled by the respective plaintiff Publisher, and such Publisher has licensed or authorized BMI (or, in the case of Southern, ASCAP) to license public performance rights for the Publishers' Compositions to broadcasters.

- 7 -

38.    On or about October 29, 1996, Defendants LAMCO and ACEMLA P.R. commenced an action in this Court, identified as LAMCO et al. v. Archdiocese of San Juan et al., Civ. No. 96-2312 (PG) (the "LAMCO Action"), against numerous radio stations based in Puerto Rico (the "Radio Stations") for, *inter alia*, copyright infringement arising out of the Radio Stations' purported unauthorized public performance of 61 musical compositions in which Defendants claim ownership.

39.    Plaintiff Publishers are the respective owners of the copyrights in many of the musical compositions which are the subject of the LAMCO Action and plaintiff BMI is the performing rights society authorized on behalf of the Publishers (other than Southern) to grant public performance licenses to the Radio Stations for such musical compositions.

40.    Upon information and belief, other musical compositions to which Defendants claim ownership are in the public domain.

**1st through 407th CLAIMS**

**(Copyright Infringement on behalf of the Peermusic Plaintiffs)**

41.    The Peermusic Plaintiffs repeat each allegation contained in paragraphs 1 through 40 of this Complaint.

42.    The Peermusic Plaintiffs, corporations which were organized between 1928 and 1955, have been engaged in the music publishing business since as early as 1928. By virtue of the Composer Contracts identified in Exhibit A hereto the Peermusic Plaintiffs acquired and continue to own and control the copyrighted musical compositions identified in Exhibit A hereto.

43.    The musical compositions identified in Exhibit A (hereinafter referred to as the "Peermusic Compositions") constitute original copyrightable subject matter under the laws of the United States.

44.    The Peermusic Plaintiffs (or their predecessors-in-interest) have complied with all relevant provisions of the Copyright Act with respect to each of the Peermusic Compositions and has either (1) received from the Copyright Office a Certificate of Registration or (2) received confirmation from the Copyright Office that it has received the registration application, deposit copy and required fee for each of the Peermusic Compositions identified in Exhibit A.

45.    In and during the three year period preceding the filing of this Complaint, Defendants have notified broadcasters and other users of copyrighted music in the United States of Defendants' claim of ownership or control of the copyrights in the Peermusic Compositions.

46.    In and during the three year period preceding the filing of this Complaint, Defendants have attempted to license and collect public performance license fees from such broadcasters for the public performance of the Peermusic Compositions.

47.    Upon information and belief, Defendants have granted licenses and collected license fees for the use of the Peermusic Compositions without the Peermusic Plaintiffs' authority or consent.

48.    Defendants have infringed the Peermusic Plaintiffs' copyrights in the Peermusic Compositions by authorizing or offering to license the public performance of the Peermusic Compositions without the authority or consent of the Peermusic Plaintiffs.

49.    Defendants' infringement has been willful.

- 9 -

50.    The Peermusic Plaintiffs have been and continue to be damaged by Defendants' activities and conduct.  Defendants have profited thereby and unless their conduct is enjoined, the Peermusic Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

### 408th through 452nd CLAIMS

### (Copyright Infringement on behalf of FAF)

51.    FAF repeats each allegation contained in paragraphs 1 through 40 of this Complaint.

52.    By virtue of the Composer Contracts identified in Exhibit B hereto and various assignments from the copyright owners, FAF acquired and continues to own or control the copyrighted musical compositions identified in Exhibit B hereto.

53.    The musical compositions identified in Exhibit B (hereinafter referred to as the "FAF Compositions") constitute original copyrightable subject matter under the laws of the United States.

54.    FAF (or its predecessors-in-interest) has complied with all relevant provisions of the Copyright Act with respect to each of the FAF Compositions and has received from the Copyright Office a Certificate of Registration for each of the FAF Compositions identified in Exhibit B.

55.    In and during the three-year period preceding the filing of this Complaint, Defendants have notified broadcasters and other users of copyrighted music in the United States of Defendants' claim of ownership or control of the copyrights in the FAF Compositions.

- 10 -

56.   In and during the three-year period preceding the filing of this Complaint, Defendants have attempted to license and collect public performance license fees from such broadcasters for the public performance of the FAF Compositions.

57.   Upon information and belief, Defendants have granted licenses and collected license fees for the use of the FAF Compositions without FAF's authority or consent.

58.   Defendants have infringed FAF's copyrights in the FAF Compositions by authorizing or offering to license the public performance of the FAF Compositions without FAF's authority or consent.

59.   Defendants' infringement has been willful.

60.   FAF has been and continues to be damaged by Defendants' activities and conduct. Defendants have profited thereby and unless their conduct is enjoined, FAF will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

### 453rd through 470th CLAIMS

### (Copyright Infringement on behalf of EMI Plaintiffs)

61.   EMI Plaintiffs repeat each allegation contained in paragraphs 1 through 40 of this Complaint.

62.   By virtue of the Composer Contracts identified in Exhibit C hereto and various assignments from the copyright owners, the EMI Plaintiffs acquired and continue to own or control the copyrighted musical compositions identified in Exhibit C hereto.

- 11 -

63.    The musical compositions identified in Exhibit C (hereinafter referred to as the "EMI Compositions") constitute original copyrightable subject matter under the laws of the United States.

64.    The EMI Plaintiffs (or their predecessors-in-interest) have complied with all relevant provisions of the Copyright Act with respect to each of the EMI Compositions and has either (1) received from the Copyright Office a Certificate of Registration or (2) received confirmation from the Copyright Office that it has received the registration application, deposit copy and required fee for each of the EMI Compositions identified in Exhibit C.

65.    In and during the three-year period preceding the filing of this Complaint, Defendants have notified broadcasters and other users of copyrighted music in the United States of Defendants' claim of ownership and control of the copyrights in the EMI Compositions.

66.    In and during the three-year period preceding the filing of this Complaint, Defendants have attempted to license and collect public performance license fees from such broadcasters for the public performance of the EMI Compositions.

67.    Upon information and belief, Defendants have granted licenses and collected license fees for the use of the EMI Compositions without EMI's authority or consent.

68.    Defendants have infringed the EMI Plaintiffs' copyrights in the EMI Compositions by authorizing or offering to license the public performance of the EMI Compositions without the EMI Plaintiffs' authority or consent.

69.    Defendants' infringement has been willful.

- 12 -

70.     The EMI Plaintiffs have been and continue to be damaged by Defendants' activities and conduct.  Defendants have profited thereby and unless their conduct is enjoined, the EMI Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

## 471st CLAIM

### (Declaratory Judgment on Behalf of the Publishers)

71.     The Publishers repeat each allegation contained in paragraphs 1 through 40 of this Complaint.

72.     The Publishers are the respective owners of the copyrights in and to each of the Peermusic Compositions, EMI Compositions and FAF Compositions (collectively the "Publishers' Compositions") identified in Exhibits A through C hereto.

73.     Defendants purport to own or control the copyrights in the Publishers' Compositions by virtue of certain agreements, including agreements with various third-parties as well as assignment agreements solicited by Defendants from certain of the authors of the Publishers' Compositions or their statutory successors (collectively the "Authors"), purporting to assign to Defendants the copyrights in and to the Publishers' Compositions.

74.     Any such assignments to Defendants were subsequent to the original copyright assignments from the Authors to the Publishers.

75.     Any such assignments are in direct violation of the respective Composer Contracts between the Publishers and the Authors, and are void and ineffective.

- 13 -

76.     Defendants claim ownership to the copyrights in the Publishers' Compositions, have commenced the LAMCO Action in this Court seeking recovery for infringement of the copyrights in several of the Publishers' Compositions, and have licensed and attempted to license the Publishers' Compositions to broadcasters in this judicial district and throughout the United States.

77.     An actual controversy exists between the parties which is ripe for adjudication and which requires a determination by this Court that the Publishers, and not Defendants, are the lawful owners of the copyrights in and to the Publishers' Compositions.

78.     The Publishers have no adequate remedy at law.

### 472nd CLAIM

### (Declaratory Judgment on Behalf of BMI)

79.     BMI repeats each allegation contained in paragraphs 1 through 40 of this Complaint.

80.     Except for those compositions identified in the Exhibits as belonging to Southern, BMI is authorized to grant public performance licenses for the musical compositions identified in Exhibits A, B and C hereto (the "BMI Compositions") on behalf of the respective copyright owners.

81.     Defendants have licensed or attempted to license the BMI Compositions to broadcasters, including radio stations in this judicial district, without license or authority from the copyright owners of the BMI Compositions.

- 14 -

82.    Defendants have asserted claims against radio stations in the LAMCO Action in this judicial district for copyright infringement based upon such radio stations' alleged public performance of certain of the BMI Compositions.

83.    BMI has issued public performance licenses to certain radio stations which are defendants in the LAMCO Action for the BMI Compositions.

84.    Accordingly, such radio stations which obtained licenses from BMI for the BMI Compositions did not infringe any of Defendants' claimed rights in the BMI Compositions.

85.    An actual controversy exists between BMI and the Defendants which is ripe for adjudication and which requires a determination by this Court that BMI and not Defendants have the right to grant public performance licenses with respect to the BMI Compositions and that such radio stations did not infringe the copyrights or otherwise violate any purported rights of the Defendants in any of the BMI Compositions.

86.    BMI is entitled to a declaration that it, and not Defendants, has the right to license the public performance of the BMI Compositions.

### 473rd CLAIM

(Tortious Interference With Contract
on Behalf of the Peermusic Plaintiffs)

87.    The Peermusic Plaintiffs repeat each allegation contained in paragraphs 1 through 40 of this Complaint.

88.    The Peermusic Plaintiffs (or their predecessors-in-interest) have entered into agreements with certain Authors pursuant to which said Authors have, inter alia, assigned to the

Peermusic Plaintiffs the copyrights in and to the Peermusic Compositions identified in Exhibit A hereto.

89.    Upon information and belief, Defendants, with notice and knowledge of the existence of the contractual relationships between the Peermusic Plaintiffs and the Authors, have wrongfully and intentionally solicited certain of the Authors to repudiate and breach certain of the Authors' agreements and enter into purported successor agreements with Defendants in their place.

90.    Upon information and belief, Defendants, with notice and knowledge of the existence of the Authors' contractual relationships with the Peermusic Plaintiffs, have exercised those rights previously granted to the Peermusic Plaintiffs by certain of the Authors.

91.    Upon information and belief, Defendants have solicited the Authors to enter into agreements with Defendants with the express purpose of unilaterally and unlawfully terminating the relationships between the Peermusic Plaintiffs and certain of the Authors.

92.    Upon information and belief, said intentional interference by the Defendants is ongoing.

93.    As a result of this tortious interference with contract by Defendants, Peermusic has suffered damages in an amount to be determined at trial.

94.    Defendants' tortious interference with contract was and continues to be willful and malicious, thereby entitling Peermusic to punitive damages and to an award of reasonable attorneys' fees as permitted under applicable law.

**474th CLAIM**

**(Tortious Interference With Contract on Behalf of FAF)**

95.    FAF repeats each allegation contained in paragraphs 1 through 40 of this Complaint.

96.    FAF (or its predecessors-in-interest) has entered into agreements with the composer C. Curet Alonso ("Curet Alonso") pursuant to which Curet Alonso has, inter alia, assigned to FAF (or its predecessors-in-interest) the copyrights in and to the FAF Compositions identified in Exhibit B hereto.

97.    Upon information and belief, Defendants, with notice and knowledge of the existence of the contractual relationships between FAF and Curet Alonso, have wrongfully and intentionally solicited Curet Alonso to repudiate and breach certain of his agreements with FAF (or its predecessors-in-interest) and enter into purported successor agreements with Defendants in their place.

98.    Upon information and belief, Defendants, with notice and knowledge of the existence of the contractual relationships between FAF and Curet Alonso, have exercised those rights previously granted to FAF by Curet Alonso.

99.    Upon information and belief, Defendants have solicited Curet Alonso to enter into agreements with Defendants with the express purpose of unilaterally and unlawfully terminating the relationship between FAF and Curet Alonso.

100.    Upon information and belief, said intentional interference by the Defendants is ongoing.

- 17 -

101.    As a result of this tortious interference with contract by Defendants, FAF has suffered damages in an amount to be determined at trial.

102.    Defendants' tortious interference with contract was and continues to be willful and malicious, thereby entitling FAF to punitive damages and to an award of reasonable attorneys' fees as permitted under applicable law.

### 475th CLAIM

### (Tortious Interference With Contract on Behalf of EMI Catalogue)

103.    EMI Catalogue repeats each allegation contained in paragraphs 1 through 40 of this Complaint.

104.    EMI Catalogue (or its predecessors-in-interest) has entered into agreements with the following Authors pursuant to which the Authors have, inter alia assigned to EMI Catalogue the copyrights in the musical compositions identified in Exhibit C hereto.

105.    Upon information and belief, Defendants, with notice and knowledge of the existence of the contractual relationships between EMI Catalogue and the Authors, have wrongfully and intentionally induced and caused the Authors to breach certain of the Authors' agreements and enter into agreements with Defendants in their place.

106.    Upon information and belief, Defendants, with notice and knowledge of the existence of the contractual relationships with EMI Catalogue have exercised those rights previously granted to EMI Catalogue by the Authors.

- 18 -

107.    Upon information and belief, Defendants have solicited the Authors to enter into agreements with Defendants with the express purpose of eroding the relationship between EMI Catalogue and the Authors.

108.    Upon information and belief, said intentional interference by the Defendants is ongoing.

109.    As a result of this tortious interference with contract by Defendants, EMI Catalogue has suffered damages in an amount to be determined at trial.

110.    Defendants' tortious interference with contract was and continues to be willful and malicious, thereby entitling EMI Catalogue to punitive damages and to an award of reasonable attorneys' fees as permitted under applicable law.

WHEREFORE, Plaintiffs very respectfully pray this Honorable Court to grant them judgment ordering, adjudging and decreeing as follows:

1.    That Defendants, their agents, servants, employees, contractors and all persons, firms, corporations or entities acting under their direction, authority or control, and all persons acting in concert with any of them, be enjoined permanently from authorizing or licensing or purporting to authorize or license the public performance or any other use of the Publishers' Compositions, and from otherwise infringing, or contributing to or participating in the infringement of the Publishers' copyrights in the Publishers' Compositions or any other songs to which Publishers own the copyrights.

2.    That Defendants, jointly and individually, be required to pay to the Publishers at their election either (a) such damages as the Publishers have sustained as a result of Defendants'

copyright infringement together with all gains, profits and advantages derived therefrom by Defendants or (b) statutory damages of not less than One Hundred Thousand Dollars ($100,000.00) for each infringement of each of the copyrights in the Publishers' Compositions.

3.    That the Publishers be awarded damages in an amount to be determined at trial in connection with Defendants' tortious interference with their respective contracts with each of their Authors.

4.    That Defendants, their agents, servants, employees, contractors and all persons, firms, corporations or entities acting under their direction, authority or control, and all persons acting in concert with any of them, be enjoined permanently from interfering with the contracts between the Publishers and their respective Authors.

5.    That the Publishers are the proper owners of the copyrights in and to the Publishers' Compositions and that the Publishers have the exclusive rights to license or authorize others to license the public performance of the Publishers' Compositions;

6.    That Defendants do not have the right to license or otherwise authorize any use of the Publishers' Compositions or BMI Compositions;

7.    That Defendants be ordered to delete all references to the Publishers' Compositions from all of their catalogues and all marketing or promotional materials.

8.    That Defendants be ordered to file appropriate quitclaims and assignments and otherwise to have expunged from the records of the Copyright Office any and all unlawful

- 20 -

contracts, assignments or other recorded documents affecting the Publishers' title in and to any if the subject Publishers' Compositions;

9.    That Defendants be ordered to pay Plaintiffs' costs incurred herein, including reasonable attorneys' fees; and

10.    That such other and further relief be awarded to Plaintiffs which this Court deems just, proper, and equitable.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 16th day of December, 1997.

AXTMAYER ADSUAR MUÑIZ & GOYCO, P.S.C.
P.O. Box 70294
San Juan, Puerto Rico  00936-8294
Tel: (787) 756-9000
Fax: (787) 756-9010


FRANCISCO A. BESOSA
USDC-PR NO. 126502

- and -

RICHARDS & O'NEIL, LLP
Attorneys for Plaintiffs
Barry I. Slotnick
Jacques M. Rimokh
885 Third Avenue
New York, New York 10022
Tel: (212) 207-1200
Fax: (212) 750-9022